IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ADVANCED TRANSACTIONS, LLC,

               Plaintiff,

      v.

NORTHEAST GROCERY INC., PRICE
CHOPPER OPERATING CO., INC. and THE
GOLUB CORPORATION,

               Defendants.

Case No.

Jury Trial Demanded

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Advanced Transactions, LLC ("Advanced Transactions") files this

Complaint against Defendants Northeast Grocery Inc., Price Chopper Operating Co.,

Inc., and The Golub Corporation (individually and collectively referred to herein as

"Golub" or "Defendant") for infringement of United States Patent No. 7,065,555 (the

"'555 Patent" or "patent-in-suit", attached as **Exhibit A**), and alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the patent laws of

the United States, 35 U.S.C. §§ 1 *et seq.*

## THE PARTIES

2.      Advanced Transactions is a limited liability company organized under the laws of the State of Georgia with its principal place of business at 107 Technology Pkwy NW, Suite 508, Peachtree Corners, GA 30092.

3.      Advanced Transactions owns all right, title and interest in the '555 patent, including the right to sue for past infringement and to recover damages therefor.

4.      Advanced Transactions has not licensed or otherwise authorized Golub to practice the '555 patent.

5.      On information and belief, Defendant, Northeast Grocery, Inc. is a corporation organized and existing under the laws of Delaware its principal place of business at 461 Nott Street, Schenectady, NY 12308.

6.      On information and belief, Defendant, The Golub Corporation is a corporation organized and existing under the laws of Delaware its principal place of business at 461 Nott Street, Schenectady, NY 12308.

7.      On information and belief, Defendant, Price Chopper Operating Co., Inc. is a corporation organized and existing under the laws of New York its principal place of business at 461 Nott Street, Schenectady, NY 12308.

8.      On information and belief, Defendants Northeast Grocery, Inc., The Golub Corporation, and Price Chopper Operating Co., Inc., have acted in concert with each other to form a joint enterprise to infringe the patent-in-suit by making, using, selling, and/or, offering for sale the Price Chopper Email Campaign Products and Services, (as defined below) and making and using the Price Chopper Email Campaign System, (as

2

defined below), by promoting, encouraging, and supporting the email marketing of the Price Chopper and Market 32 grocery stores.

9.      Golub operates supermarket stores under the Price Chopper and Market 32 brands throughout New York, Connecticut, Massachusetts, Vermont, Pennsylvania, and New Hampshire, including in this judicial district.

**BACKGROUND FACTS**

10.      On or about February 25, 2022, through its counsel, Advanced Transactions sent a letter ("February 2022 Letter") by email and FedEx to Scott Grimmett, then-President and Chief Executive Officer of Golub, with a copy sent to Golub's registered agent. The February 2022 Letter identified the '555 patent by number, informed Golub that its marketing products and service offerings infringed one or more claims of Advanced Transactions' patents, and invited Golub to participate in licensing discussions. A copy of the February 2022 Letter is attached as **Exhibit B**.

11.      On information and belief, Mr. Grimmett and/or Golub's officers received the February 2022 Letter via email on or about February 25, 2022

12.      On February 28, 2022, a FedEx package containing the February 2022 Letter was delivered to 461 Nott Street, Schenectady NY via FedEx, and signed for by "J. Fielda," and was subsequently delivered to Mr. Grimmett and/or Golub's officers.

13.      On February 28, 2022, a FedEx package containing the February 2022 Letter was delivered via FedEX to the Corporation Service Company as agent for The Golub Corporation, was signed for by "R. Ashad," and was subsequently delivered to Mr. Grimmett and/or Golub's officers.

14.     On or about April 6, 2022, through its counsel, Advanced Transactions sent a follow-up letter ("April 2022 Letter") to Frank Curci, then-President and Chief Executive Officer of Northeast Grocery, Inc., reiterating the invitation to enter into licensing discussions. A copy of the April 2022 Letter is attached as **Exhibit C**.

15.     On or about July 7, 2023, through its counsel, Advanced Transactions followed up on the aforementioned correspondence through an email to Mr. Curci ("July 2023 Letter"). A copy of the July 2023 Email is attached as **Exhibit D**.

16.     As of the date of filing this Complaint, Golub has not responded to any of the aforementioned correspondence.

17.     On information and belief, Mr. Grimmett served as President and Chief Executive Officer of Golub during the period relevant to the February 2022 Letter.

18.     On information and belief, Mr. Curci served as President and Chief Executive Officer of Northeast Grocery, Inc. during the period relevant to the April 2022 Letter and July 2023 Letter, until his retirement, effective February 26, 2024. *See* https://www.pricechopper.com/blog/news-release-frank-curci-to-retire-as-ceo-of-northeast-grocery-inc-coo-john-persons-tapped-to-succeed-him/.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

20.     This Court has personal jurisdiction over Golub because Golub committed acts of infringement in this judicial district. On information and belief, Golub performed

and caused to be performed the patented methods of the '555 patent in the Southern District of New York by operating the accused Price Chopper Email Campaign System (defined below) to send marketing emails to customers in this judicial district and by receiving and processing responses to those emails from customers located in this judicial district.

21.     On information and belief, Golub is subject to this Court's jurisdiction because it regularly conducted and solicited business in this judicial district, maintained retail stores in this judicial district, derived substantial revenue from operations in this judicial district, and employed residents of this judicial district.

22.     Venue is proper under 28 U.S.C. § 1400(b) because Golub committed acts of infringement in this District and maintains regular and established places of business here, including its Market 32 store at 39 North Plank Road, Newburgh, New York 12550, and its Price Chopper store at 2585 South Road, Poughkeepsie, New York 12601. Golub committed acts of infringement in this District by operating the Price Chopper Email Campaign System to send the accused marketing emails to customers in this District and by receiving and processing responses to those emails from customers located in this District.

**ACCUSED PRODUCTS AND SERVICES**

23.     On information and belief, during the period of infringement and through the expiration of the '555 patent, Golub operated email marketing campaigns directed at its customers and prospective customers, including through: (1) Price Chopper and Market 32 marketing emails, including promotional emails, transactional emails, and

5

newsletter emails sent to customers; (2) the Price Chopper/Market 32 AdvantEdge Card loyalty program, insofar as it collected and maintained customer email addresses used in email marketing campaigns; and (3) the Price Chopper website, insofar as it facilitated customer email registrations and served as the destination for links in marketing emails; together with (4) all other products and services used by Golub to conduct email marketing campaigns in a substantially similar manner as the above-listed products and services. (As used herein, one or more of the foregoing products and services are individually and collectively referred to as the accused "Price Chopper Email Campaign Products and Services.")

24.     On information and belief, Golub operated the Price Chopper Email Campaign Products and Services using hardware and software components including but not limited to email servers, email server software, email campaign management platforms, customer relationship management ("CRM") databases, webserver hardware, webserver software, and other hardware and software computing systems and components (individually and collectively referred to herein as the accused "Price Chopper Email Campaign System").

25.     On information and belief, Golub operated the Price Chopper Email Campaign System itself and/or through agents, contractors, and service providers acting at Golub's direction and control.

### UNITED STATES PATENT NO. 7,065,555

26.     On June 20, 2006, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,065,555 ("the '555 patent"), entitled "System

and Method Related to Generating and Tracking an Email Campaign," to inventors Michael G. Foulger, Thomas R. Chipperfield, Jeremy S. Cooper, and Andrew C. Storms. The '555 patent was filed on April 25, 2001, and claims priority to a provisional application filed April 25, 2000. The term of the '555 patent was adjusted by 696 days under 35 U.S.C. § 154(b), resulting in an expiration date no earlier than March 22, 2023. A true and correct copy of the '555 patent is attached as **Exhibit A**.

27.    The '555 patent is presumed valid under 35 U.S.C. § 282.

28.    The '555 patent relates to a method and system for generating and tracking an email campaign. At the time of the invention, existing email campaign systems suffered from specific technological deficiencies. The specification explains:

> Present email campaigns may suffer from difficulties in locating a pool of relevant individuals to be contacted. In a small email campaign, each email sent is critical to the success of the campaign, and needs to be carefully created. In other situations, large numbers of individuals to be contacted may have been found. This may result in increased difficulty in tailoring the large number of required email messages to the individuals for more effective contact.

(*See* '555 patent, col. 1:26–33.)

29.    The specification describes a further technological deficiency in prior systems—an inability to effectively track campaign responses:

> Furthermore, once an email campaign has been initiated, difficulties in measuring success of the email campaign are presented. Effective ways for determining whether email recipients have received email from the email campaign have been sought. Also, effective ways for allowing the email recipients to provide feedback have also been sought.

('555 patent, col. 1:33–41.)

30.     The '555 patent claims a specific technical solution to these problems through a particular software architecture. Rather than merely describing a goal of sending marketing emails, the claims recite a specific, structured method comprising: (a) receiving an email target database; (b) generating an email campaign template by creating both a message template and a separate configuration file containing per-target variant data insertable into the template; (c) sending customized emails formed from the template; and (d) tracking the sent custom emails. This template-plus-configuration-file architecture separates invariant campaign content from variant per-recipient data, enabling scalable email customization—a specific technological approach, not a generic application of conventional computer functions.

31.     The specification describes this architecture in detail. The email campaign generator "outputs a text message file 320 and a configuration file 330," where the "[t]ext message file 320 is a customized text message for the current email campaign" that "contains a series of custom tags to be filled in with email recipient specific data, such as the recipient's full name, other recipient specific data, and a custom URL." ('555 patent, col. 5:15–29.) The configuration file "is generated to contain data related to each email target or recipient" and "[t]he data for each email target is insertable in the message template." (Id., col. 5:30–34.) This data includes both "invariant data" (such as the subject line) and "variant data" (such as custom recipient-specific information). (Id., col. 5:30–42.)

32.     The claims of the '555 patent further recite a specific mechanism for generating custom URLs for each email recipient. For example, Claims 6 through 8

8

recite the generation of a custom URL address for each email target by generating a hash from a campaign ID, a message template version ID, a user reference ID, and a private key, and appending a portion of the generated hash to a host web address. ('555 patent, claims 6–8.) The specification explains that this hash-based URL generation served a specific technical purpose: it kept "the URL address length below the 72 character limit, avoiding word wrap," which would otherwise render the link "an unexecutable link" in email clients such as Eudora and Outlook. ('555 patent, col. 6:45–52.) This is a specific, technically-motivated design choice.

33.    The techniques claimed in the '555 patent were not well-understood, routine, or conventional at the time of the invention. The specification states that prior to the invention, there was no "efficient way to create and track a[n] email campaign." ('555 patent, col. 1:43–45.) The specific combination of (a) a message template and configuration file architecture for scalable email personalization, (b) hash-based custom URL generation using campaign IDs, version IDs, user reference IDs, and private keys, and (c) structured campaign tracking with response categorization was not a conventional arrangement of generic computer components. Each of these features, and particularly their ordered combination, represents specific, non-conventional technological choices described in detail in the '555 patent specification.

34.    Whether the claimed elements of the '555 patent — individually or in combination — were well-understood, routine, and conventional is a question of fact. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The factual allegations set forth herein, supported by the specification of the '555 patent, must be accepted as true

at the pleading stage and preclude any finding of patent ineligibility under 35 U.S.C. § 101.

<div align="center">**CLAIMS FOR RELIEF**</div>

<div align="center">**COUNT I – INFRINGEMENT OF UNITED STATES PATENT NO. 7,065,555**</div>

35.     Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

36.     Claim 1 of the '555 Patent provides as follows:

1. A method for conducting an email campaign, comprising the steps of:
> (1) receiving an email target database;
> (2) generating an email campaign template related to at least one email target in the received email target database, wherein step (2) comprises:
>> (a) generating a message template, and
>> (b) generating a configuration file to contain data related to each of the at least one email target, wherein the data is insertable in the generated message template;
> (3) sending to each of the at least one email target a corresponding custom email, wherein the custom email is formed from the email campaign template; and
> (4) tracking the custom email sent to each of the at least one email target.

37.     Claim 6 of the '555 Patent provides as follows:

6.  The method of claim 1, wherein step (b) comprises the steps of:

>> (i) generating a custom uniform resource locator address for each of the at least one email target; and
>> (ii) inserting the generated custom uniform resource locator

<div align="center">10</div>

> address for each of the at least one email target into the configuration file.

38.    Claim 9 of the '555 Patent provides as follows:

> 9. The method of claim 1, wherein step (3) comprises the step of:
>
> > (a) forming the custom email for each of the at least one email target from the generated text message template and the generated configuration file.

39.    Claim 10 of the '555 Patent provides as follows:

> 10. The method of claim 1, wherein step (4) comprises the steps of:
>
> > (a) receiving at least one response from the at least one email target; and
> > (b) creating a campaign tracking list from said received at least one response.

40.    Claim 11 of the '555 Patent provides as follows:

> 11. The method of claim 10, wherein step (b) comprises the steps of:
>
> > (i) determining a number of successful visits from the at least one email target;
> > (ii) determining a number of the custom email sent to the at least one email target that were undeliverable; and
> > (iii) determining a number of the at least one email target that requested deletion.

41.    On information and belief, during the term of the '555 patent and through its expiration on no earlier than March 22, 2023, Golub—itself and/or through agents, contractors, and service providers acting at Golub's direction and control—used the patented method of claim 1 of the '555 patent by operating the Price Chopper Email

11

Campaign System to perform each step of claim 1. By doing so, Golub infringed

(literally and/or under the doctrine of equivalents) at least claims 1, 6, and 9-11 of the

'555 patent in violation of 35 U.S.C. § 271(a).





*See* screenshots obtained from Defendant's website at least as early as February 25, 2022. *e.g.,* https://shop.pricechopper.com/account/notifications.

42.    **Claim 1, Step (1) — "receiving an email target database":** On information and belief, Golub's Price Chopper Email Campaign System received an email target database. Golub collected and maintained a database of customer email addresses through, among other things, the AdvantEdge Card loyalty program registration process and online account creation at shop.pricechopper.com. This database of customer email addresses constituted an "email target database" within the meaning of claim 1, and was received by the email campaign system for use in generating and sending marketing emails.



*See* screenshots obtained from Defendant's website at least as early as February 25, 2022.

*e.g.,* https://shop.pricechopper.com/account/notifications.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means"). Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network. Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarking"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022.

See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

43.    **Claim 1, Step (2) — "generating an email campaign template related to at least one email target in the received email target database":** On information and

14

belief, Golub's Price Chopper Email Campaign System generated an email campaign template related to at least one email target in the received email target database. As detailed in the sub-steps below, this template comprised both a message template and per-target configuration data.

44.     **Claim 1, Step (2)(a) — "generating a message template":** On information and belief, Golub's Price Chopper Email Campaign System generated a message template for use in email marketing campaigns. Price Chopper marketing emails followed a consistent template layout—including branded headers, promotional content areas, and standard footer elements—with designated fields for recipient-specific personalization such as the recipient's name and individualized tracking links. The consistent structure of these emails across recipients supports a reasonable inference that they were generated from a common message template.

15



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as February 25, 2022.

```
    <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, showing a "unique" tracking URL associated with an invisible pixel tag.

45.    **Claim 1, Step (2)(b) — "generating a configuration file to contain data related to each of the at least one email target, wherein the data is insertable in the**

**generated message template":** On information and belief, Golub's Price Chopper Email Campaign System generated per-target configuration data containing information related to each email target—including but not limited to the recipient's name, email address, loyalty program identifiers, and individualized tracking URLs—that was inserted into the message template to generate customized emails for each recipient. The presence of recipient-specific data in Price Chopper marketing emails (e.g., individualized tracking codes) supports a reasonable inference that per-target configuration data, within the meaning of claim 1, was generated and inserted into the message template.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as February 25, 2022.

```
    <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, showing a "unique" tracking URL associated with an invisible pixel tag.

46.    **Claim 1, Step (3) — "sending to each of the at least one email target a corresponding custom email, wherein the custom email is formed from the email**

**campaign template":** On information and belief, Golub's Price Chopper Email

Campaign System sent to each email target a corresponding custom email formed from

the email campaign template. Golub sent marketing emails from its email servers to

customers who had registered their email addresses, where each email contained

individualized content (*e.g.*, personalized links) merged into the common template.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as

February 25, 2022.

```
    <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.,* screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, showing a "unique" tracking URL associated with an invisible pixel tag.

47.    **Claim 1, Step (4) — "tracking the sent custom email":** On information and belief, Golub's Price Chopper Email Campaign System tracked the custom emails sent to each email target. Price Chopper marketing emails contained embedded tracking mechanisms, including tracking pixels (transparent images with unique identifiers loaded from Golub's servers or its agents' servers upon email opening) and uniquely-coded hyperlinks that recorded recipient click-through activity. Price Chopper's privacy policy confirms the use of "cookies, pixels" or "similar technologies" to record interactions and evaluate the effectiveness of its online marketing.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means"). Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network. Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022. See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

20



*See e.g.,* screenshot of email received from Price Chopper email server at least as early as February 25, 2022.

```
        <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.,* screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, showing a "unique" tracking URL associated with an invisible pixel tag.

48.     On information and belief, Golub also infringed claim 6 of the '555 patent. Claim 6 depends from claim 1 and further requires that the step of generating a

configuration file comprises: (i) generating a custom URL address for each email target, and (ii) inserting the generated custom URL address into the configuration file.

49.    **Claim 6, Step (i)**: On information and belief, Golub's Price Chopper Email Campaign System generated a custom URL address for each email target. The marketing emails sent by Golub contained hyperlinks with unique, recipient-specific URL parameters.  These "unique" URLs enabled Golub to identify which specific recipient interacted with which "unique" link.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as February 25, 2022.

```
        <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, showing a "unique" tracking URL associated with an invisible pixel tag.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means").  Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network.  Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshot obtained from Defendant's website at least as early as February 25, 2022. See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

50.    **Claim 6, Step (ii):** On information and belief, the custom "unique" URLs generated for each email target were included in the per-target configuration data and inserted into the message template to form the customized emails sent to each recipient.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as

February 25, 2022.

```
        <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper

email server at least as early as February 25, 2022, showing a "unique" tracking URL

associated with an invisible pixel tag.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means").  Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network.  Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022. See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

51.     **Claim 9:** On information and belief, Golub also infringed claim 9 of the '555 patent. Claim 9 depends from claim 1 and further requires that the step of sending a custom email comprises forming the custom email for each email target from the generated text message template and the generated configuration file. As alleged above, Golub's Price Chopper Email Campaign System formed each custom marketing email by merging recipient-specific configuration data (*e.g.,* email addresses, personalized URLs, individualized content) into a common message template.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as February 25, 2022.

```
      <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, , showing a "unique" tracking URL associated with an invisible pixel tag.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means").  Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network.  Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022. See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

52.    On information and belief, Golub also infringed claims 10 and 11 of the '555 patent. Claim 10 depends from claim 1 and further requires that the step of tracking the custom email comprises: (a) receiving at least one response from the at least one email target, and (b) creating a campaign tracking list from the received at least one response.

53.    **Claim 10, Step (a):** On information and belief, Golub's Price Chopper Email Campaign System received responses from email targets when email recipients opened marketing emails (triggering Golub's tracking pixels) or clicked on links within the emails (triggering URL redirect logging). These interactions constituted "responses" from the email targets corresponding to the sent custom emails.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as February 25, 2022.

```
        <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper email server at least as early as February 25, 2022, showing a "unique" tracking URL associated with an invisible pixel tag.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means").  Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network.  Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022.

See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

54.    **Claim 10, Step (b):** On information and belief, Golub's Price Chopper

Email Campaign System created campaign tracking data from the received responses,

including records of which recipients opened emails, which links were clicked, and

when such interactions occurred. This data constituted a campaign tracking list within

the meaning of claim 10.



*See e.g.*, screenshot of email received from Price Chopper email server at least as early as

February 25, 2022.

```
        <![endif]--><img border=3D"0" width=3D"1" height=3D"1" alt=3D"" src=3D"http://g=
o.sparkpostmail.com/q/kWA0-nr5G1U-8F-7IASmxA~~/AALj2gA~/RgRj-unIPlcDc3BjQgpi=
FshkGGJvJnFsUhlzcGl0ZS5hdmFpbC4wYUBpY2xvdWQuY29tWAQAAAAj" data-unique-identi=
fier=3D""> </div></blockquote></body></html>
```

*See e.g.*, screenshot of source code obtained from an email received from Price Chopper

email server at least as early as February 25, 2022, showing a "unique" tracking URL

associated with an invisible pixel tag.

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means"). Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network. Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022. See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

55.     **Claim 11:** Claim 11 depends from claim 10 and further requires that the step of creating a campaign tracking list comprises: (i) determining a number of successful visits from the email targets; (ii) determining a number of the custom emails that were undeliverable; and (iii) determining a number of the email targets that requested deletion. On information and belief, the Price Chopper Email Campaign System—whether operated directly by Golub or through its email campaign service providers acting at Golub's direction and control—determined each of these metrics. On information and belief, by on or about 2020, standard email campaign management platforms tracked click-through rates (successful visits), bounce rates (undeliverable emails), and unsubscribe rates (deletion requests) as fundamental operational metrics. Price Chopper marketing emails included unsubscribe mechanisms consistent with the CAN-SPAM Act, and the tracking of unsubscribe requests, bounce-backs, and click-throughs was inherent in the operation of such email marketing systems by on or about 2020.

31

When you visit our Sites and Apps we may collect certain information by using technologies such as cookies, pixels or web server logs, or location services and similar technologies (collectively "Digital Means").  Price Chopper may also use Digital Means to collect data from other sites and applications within a wider network.  Use of information collected by Digital Means allows Price Chopper to customize your shopping experiences and the analytic and marketing efforts facilitated by certain third parties, such as Google Analytics, Google Adwords, and other services. This enables us to evaluate the effectiveness of our shopping services and experiences, develop customized customer offerings and communications, enhance our online marketing programs, and to periodically present advertisements to you on the Sites and on the websites of others ("remarketing"). By participating in remarketing efforts, Price Chopper is better positioned to improve integration with other online advertising platforms and the accuracy of the customer data collected.

Unless manually disabled, cookies are small files used on all computers that uniquely identify your browser or store information. This information may indicate the pages you visit on our website, your web address, browser, device or hardware system, search terms and IP addresses. To disable these features, use currently available opt-outs for the web, such as the Google Analytics' opt out function. If you choose to manually turn off the Digital Means you may restrict the services and features available on our Sites.

*See* screenshots obtained from Defendant's website at least as early as February 25, 2022. See e.g.https://www.pricechopper.com/about-us/customer-service/privacy-policy/.

56.     Golub directly infringed, at least, claims 1, 6, 9, 10, and 11 of the '555 patent in violation of 35 U.S.C. § 271(a) by performing the patented methods—itself and/or through agents, contractors, and service providers acting at Golub's direction and control—when it operated the Price Chopper Email Campaign System during the term of the '555 patent and through its expiration.

57.     Golub's infringement of the '555 patent was willful. Golub had actual knowledge of the '555 patent no later than the date it received the February 2022 Letter, which specifically identified the '555 patent by number and informed Golub that its marketing products and services infringed one or more claims thereof. (*See* Ex. B.)

58.     On April 6, 2022, Advanced Transactions sent the April 2022 Letter, again putting Golub on notice of its infringement and reiterating the invitation to negotiate a license. (See Ex. C.) Golub failed to respond to either letter.

59.     On information and belief, despite its knowledge of the '555 patent and Advanced Transactions' infringement allegations, Golub continued to operate the Price Chopper Email Campaign System in a manner that infringed the '555 patent through

32

the patent's expiration, without obtaining a license or authorization from Advanced Transactions. Golub's continued infringement after receiving notice of the '555 patent constitutes willful infringement entitling Advanced Transactions to enhanced damages under 35 U.S.C. § 284.

60.     Golub's infringement of the '555 patent damaged Advanced Transactions. Advanced Transactions is entitled to recover damages adequate to compensate for Golub's infringement, in an amount no less than a reasonable royalty, together with enhanced damages, interest,  and costs as fixed by this Court.

## JURY DEMAND

61.     Pursuant to Federal Rule of Civil Procedure 38(b), Advanced Transactions hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Advanced Transactions respectfully requests this Court to enter judgment in Advanced Transaction's favor and against Golub as follows:

a.  finding that Golub infringed one or more claims of the '555 patent under 35 U.S.C. §§ 271(a);

b.  awarding Advanced Transactions damages under 35 U.S.C. § 284, in no event less than a reasonable royalty, together with interest and costs;

c.  An award of enhanced damages under 35 U.S.C. § 284 for Golub's willful infringement;

d.  awarding Advanced Transactions pre-judgment and post-judgment interest on the damages award and costs;

33

e.  A finding that this case is exceptional and an award of attorneys' fees and costs under 35 U.S.C. § 285

f.  awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: April 30, 2026                          Respectfully submitted,

*/s/ Oded Burger*
[S.D. New York Counsel]
Oded Burger*
New York State Bar No. 4910808
Erin Hadi* (*pro hac vice* to be filed)
DC Bar No. 90031321
oburger@daignaultiyer.com
ehadi@daignaultiyer.com
**DAIGNAULT IYER LLP**
8229 Boone Boulevard, Suite 450
Vienna, VA 22182


*Attorneys for Plaintiff Advanced Transactions LLC.*

*Not admitted to practice in Virginia